## PATRICK O'DONOHUE v. THE NEW JERSEY HOME FOR DISABLED SOLDIERS.

Submitted June 10, 1900—Decided November 12, 1900.

The prosecutor, a United States pensioner, receiving $12 a month, was discharged from the New Jersey Home for Disabled Soldiers by the board of managers thereof for refusing to obey a standing resolution adopted by the board prior to the date of his application for admission. This resolution required all pensioners who received over $9 a month to pay a certain proportion of their pension ($4 a month in the present case) toward the expenses of the home. In his written application for admission the prosecutor had agreed to obey all the regulations of the board for the surrender of any pension moneys he might receive while a member of the home. *Held,* that the board had authority to pass the resolution; that it was a valid, reasonable and subsisting regulation at the time the prosecutor was admitted to the home, and that in view of his agreement and its violation he was rightfully discharged.

On *certiorari.*

Before Justices DIXON, GARRISON and COLLINS.

For the prosecutor, *Elvin W. Crane.*

For the defendant, *Chauncey G. Parker.*

The opinion of the court was delivered by

GARRISON, J. This writ is brought to reverse the action of the board of managers of the New Jersey Home for Disabled Soldiers, by which the prosecutor was discharged from the home. The return shows that this action against the prosecutor was taken because he refused to obey a certain resolution, adopted several years before his admission, to the effect that "all in-patients receiving a pension from the United States of nine dollars and more per month" should pay to the superintendent of the home a quarterly sum proportionate to their pensions. In the case of the prosecutor, whose

pension was $12, the sum to be paid was $4 a month. For his refusal to pay this sum he was discharged by the board on the 20th day of November, 1899.

From the return it appears that the prosecutor's application for admission to the home was presented in writing upon the 31st day of April, 1897, and that in that application he agreed that he would obey all the regulations of the board of managers "including rules for the surrender of any pension moneys applicant may receive while a member of said home." The resolution above recited was then in force, so that it is clear that if that resolution was one that the managers of the home might lawfully make, their action in discharging the prosecutor for refusing to obey it was likewise lawful. It is argued upon the other hand that if the managers had not authority to pass this resolution, then their action in discharging O'Donohue was nugatory. This latter proposition is somewhat the broader of the two, and need not be considered if the former be decided in favor of the authority of the board.

The argument against the power of the board to pass the resolution is this: In 1866 the home was founded by an act of the legislature which, among other things, in section 7, prescribed the conditions upon which persons might be admitted to the home. One of these conditions was the applicant's "consent and agreement to transfer to the state, for the use of the home, any pension to which he may be entitled from any state or from the United States, during the time he shall be a patient at the said home." *Pamph. L.* 1866, *p.* 957.

The resolution in question was passed by the board on the 1st day of June, 1878.

In 1889 (*Pamph. L., p.* 452) the above-mentioned section of the act was amended by omitting the provision above cited. So that, in 1897, when the prosecutor applied for admission, there was no statutory requirement that he should agree to assign his pension for the use of the home.

From this course of legislation the counsel for the prose-

cutor draws three deductions, any one of which would result, if adopted by this court, in reversing the action of the board.

*First.* That by omitting the previously existing provision of the statute, the legislature had denied to the managers of the home the right to make any agreement with applicants respecting the surrender of their pensions.

*Second.* That the act of 1889 nullified, *proprio vigore,* the resolution of 1878.

*Third.* That since the act of 1889, the board has been without authority either to take from the prosecutor an agreement in respect to his pension or to enforce such a resolution as that under which he was expelled.

Notwithstanding the persuasive quality of these suggestions, I cannot give to the mere dropping of the provision that required in all cases the surrender of all pension moneys the force ascribed to it by counsel.

To my mind its effect was simply to repeal a hard and fast rule and to commit the whole matter of admissions to the discretion of the managers. It is not necessary for the decision of the prosecutor's case to pursue the subject. He had no right to demand admittance to the home or to prescribe the conditions upon which his application would be granted. He had an unqualified right to reject any condition imposed by the board or to accept the terms upon which admittance was offered to him. He chose to assent to the condition established by the standing resolution referred to. This assent he could withdraw at any time with the effect of placing himself exactly where he was when he proffered his application. When he refused longer to abide by the agreement to which he owed his admission he, in effect, ceased to be a member of the home, so far as either the legality or the justice of his claim was concerned. The resolution of which he complains simply gave effect to his own election in the premises. I cannot see how he can take anything by his writ. The action of the managers is affirmed, with costs.